IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELDON CHICK, et al.** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 21-1318** |
| | : | |
| **SERRANO ACQUISITIONS, et al.** | : | |

McHUGH, J.                                                                                       January 31, 2022

## MEMORANDUM

This case is a companion to *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, and raises nearly identical claims. For the reasons set forth in my Memorandum Opinion in Civil Action No. 21-0684, attached hereto, I am also obligated to dismiss this case.

### I.   Relevant Factual and Procedural Background

In the midst of a housing crisis made worse by the COVID-19 pandemic, adult plaintiffs Eldon Chick and Dreama Yamina Asencio, and two minor plaintiffs in the care of one or both adults, S.A. and Z.C, were unhoused.[1] SAC ¶¶3-5, ECF 23. Plaintiff Eldon Chick and minor plaintiff(s) had been without regular and secure housing for three years before, in part because of periodic unemployment, poverty, and "endemic stagnancy" on Philadelphia's waiting list for public housing, which has been closed since 2013.[2] *Id*. ¶50. Plaintiff Asencio and minor plaintiff(s) had previously secured regular and secure housing with the Philadelphia Housing Authority but lost it

---

[1] There is some ambiguity in the Complaint about which minor Plaintiffs lived with which adult Plaintiffs during the periods prior to living at the property at issue in this litigation.

[2] *See* Philadelphia Housing Authority, Information on Admissions to Public Housing Program.

due to Ms. Asencio's addiction. Her other housing arrangements were not sustainable because of domestic violence issues. *Id.* All Plaintiffs are Latino or African American. *Id.* ¶¶3-4.

In their search for housing, Plaintiffs sought help from Cheri Honkala, a community activist, and the nonprofit she operates, Poor People's Economic Human Rights Campaign ("PPEHRC"). *Id.* ¶¶1-2, 43. The organization's stated mission is to "improve the public health, housing conditions and economic rights of poor people in Philadelphia." *Id.* ¶¶1-2.

Cheri Honkala and PPEHRC "procured" 106 E. Westmoreland Street, Philadelphia, PA 19134 in November 2020 for Plaintiffs to live in. *Id.* ¶¶48, 148. Around February 4, 2020, HSBC Bank had purchased the property at issue for $45,000. The property was then sold to Defendant Serrano Acquisitions, LLC in February 2021 for $36,550. *Id.* ¶47. At the time that Plaintiffs moved in, the property was vacant, and pursuant to Ms. Honkala's advice, Plaintiffs simply occupied the property, which Plaintiffs assert had been "abandoned" by HSBC and remained abandoned by Serrano Acquisitions. *Id.* Plaintiffs Honkala and PPEHRC allege that they "provided the resources and/or labor to rehabilitate" this property and others like it to be "fit for human habitation." *Id.* ¶48.

In early March 2021, several police officers from the 24th and 25th Districts of Defendant City of Philadelphia's Police Department and a representative from Defendant Serrano Acquisitions are alleged to have forced open the front door to 106 E. Westmoreland Street in order to evict the plaintiffs. Defendants left after they were presented with a copy of a PECO bill for electrical service by Mr. Chick. *Id.* ¶55.

On August 19, 2021, Defendant Serrano Acquisitions filed a state court ejectment action against Plaintiffs. *Serrano Acquisitions, LLC v. Chick, et. al.*, No. 1724 (Phila. Ct. Com. Pl. Cty. Aug. 19, 2021) to remove the Plaintiffs from 106 E. Westmoreland Street, SAC ¶60 n.23.

Plaintiffs appear to have been evicted pursuant to the ejectment action sometime since the SAC was filed.[3]  Plaintiffs allege that the resulting housing instability has caused them to suffer from depression, mental health ailments, and/or disabilities or disorders for which they lack care.  *Id.* ¶61.

In addition to facing the threat of eviction, Plaintiffs allege that beneficiaries of Cheri Honkala and PPEHRC's work "such as Plaintiff(s) and the minor Plaintiff(s) herein, have been threatened by Defendant(s) with (or actually have been) subjected to the forced separation of their families" when the Philadelphia Police Department, the Philadelphia Department of Human Services, the Sheriff's Office of Philadelphia, and/or the First Judicial District of Philadelphia placed minors in foster care. *Id.* ¶59.  It is unclear as pleaded in the Second Amended Complaint whether Plaintiffs themselves were threatened or subjected to the forced separation of their families, or whether the allegations refer generally to beneficiaries of Ms. Honkala and PPEHRC's work.

Ms. Honkala originally filed this lawsuit *pro se* and on behalf of PPEHRC and the individual Plaintiffs on March 17, 2021.  ECF 1.  After obtaining counsel, Plaintiffs filed an Amended Complaint on June 29, 2021, ECF 9, and a Second Amended Complaint on September

---

[3] According to Plaintiffs, after Serrano Acquisitions filed the state court ejectment action, Plaintiffs' counsel informed Serrano Acquisitions' counsel that Plaintiffs would vacate the property without the need for compulsion by the Philadelphia Sherriff or the Philadelphia Police Department.  They contend, however, that while the Plaintiffs were in the process of moving out in November, defendant City's Police Department assisted Defendant Serrano with the eviction. Plaintiffs' Resp. to Def. City of Philadelphia's Motion to Dismiss, at 4, ECF 38.

In their response to Defendant City of Philadelphia's Motion to Dismiss, Plaintiffs also allege that while assisting Defendant Serrano in ejecting the Plaintiffs from the property, on November 6, 2021, Philadelphia police officers "seiz[ed] an urn containing the cremated ashes of a stillborn child, named Shianne Mahilah Washington, whose mother, Shakia Priester, was living with Plaintiffs herein at Westmoreland Street." Plaintiffs' Resp. to Def. City's Motion to Dismiss, at 4.  *Id.*  At the motion to dismiss stage, the Court is bound by the information contained in the pleadings.  *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999. In any event, plaintiffs appear to have filed a criminal complaint against Defendant City's Police Department with respect to these new allegations.

27, 2021. ECF 23. The Second Amended Complaint alleges various causes of action against the City of Philadelphia, the Philadelphia Housing Authority (PHA), the First Judicial District of Pennsylvania (FJD), Serrano Acquisitions LLC, HSBC Bank, and federal defendants including U.S. Department of Housing and Urban Development (HUD); Marica Fudge, Secretary of HUD; U.S. Department of Health and Human Services ("HHS"); and Xavier Becerra, Secretary of HHS.[4] Plaintiffs seek declaratory relief establishing that the individual Plaintiffs may live lawfully at 106 E. Westmoreland Street, an injunction permanently enjoining Defendants from evicting Plaintiffs from the property, a declaration that all unutilized and underutilized federal public buildings and real property be used for purposes of ameliorating the homelessness crisis in Philadelphia, and an award of compensatory and punitive damages to fund a Conservator to rehabilitate the Property.

## II.     Standard of Review

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.    Discussion

Similar to the Complaint in the related action, the Complaint here is scattershot, often lacking in precision, and alleges liability based on several unrelated statutes and purported violations of constitutional rights. As an initial matter, there is an important factual difference in this case. The property in question is owned by a private party, not any governmental entity. Unlike the Philadelphia Housing Authority (PHA) or the U.S. Department of Housing & Urban

---

[4] Defendants "Dominic," Philadelphia Sheriff's Office and Philadelphia Police Department were terminated as defendants.

Development (HUD), also named as defendants here, neither Serrano Acquisitions nor HSBC Bank can be deemed to owe a duty to provide low-cost housing to those in need.

Plaintiffs allege violations of the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. (hereinafter the "FHA"), the Religious Freedom Restoration Act of 1993, 42 U.S.C. §§ 2000bb et seq. (hereinafter "RFRA"), the Religious Land Use and Institutionalized Persons Act of 2000 (hereinafter "Religious Land Use Act"), 42 U.S.C. §§ 2000cc et seq., 42 U.S.C. § 1983 (hereinafter "Section 1983"), the Stewart B. McKinney Homelessness Assistance Act (hereinafter the "McKinney Act"), 42 U.S.C. §§ 11411, et seq., Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and a claim under Pennsylvania's Abandoned and Blighted Property Conservatorship Act, 68 P.S. §§ 1101 et seq.  Plaintiffs also seek declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.  All the defendants, to include the City of Philadelphia, First Judicial District of Pennsylvania, Marcia Fudge, the Department of Health and Human Services, and Xavier Becerra, move to dismiss Plaintiffs' claims.  For the below reasons, Defendants' motions to dismiss are granted and Plaintiffs' Second Amended Complaint is dismissed in full.

1. **Plaintiffs Fail to State a Claim Against the First Judicial District**

For the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, Plaintiffs have failed to state a claim with respect to the First Judicial District.

2. **Plaintiffs Fail to Establish a Claim Under the Fair Housing Act**

For the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, Plaintiffs' claims fail because they are neither buyers nor renters within the meaning of the FHA.  Plaintiffs do not allege any facts that they made

a bona fide offer to HSBC Bank to purchase or rent the property during the four-month period in which they occupied it while HSBC Bank owned it, nor do they allege that HSBC Bank refused to negotiate for the sale or rental of the property. Moreover, even if Plaintiffs alleged that they were willing and able to make a bona fide offer which HSBC Bank refused, they also fail to allege any facts suggesting that HSBC Bank made the property unavailable to them "because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

### 3. Plaintiffs Fail to Establish a Claim under the Religious Freedom Restoration Act or the Religious Land Use and Institutionalized Persons Act

For the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, Plaintiffs' claims under RFRA and RLUPA fail. Moreover, with respect to Plaintiffs' claims against Serrano Acquisitions and HSBC Bank, RFRA does not apply as neither party is a government actor.[5] *See* 42 U.S.C. §§ 2000bb-1(a), (b).

### 4. Plaintiffs Fail to Establish a Claim under the McKinney Vento Act.

For the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, Plaintiffs' claims fail.

### 5. Plaintiffs Fail to Establish a Violation of their Constitutional Rights under the Due Process Clause and Equal Protection Clause

Plaintiffs fail to establish a violation of their constitutional rights under the due process clause.[6] Plaintiffs allege that after they began living in the property in November 2020, title to the property

---

[5] Plaintiffs allege that "Defendant Serrano adequately satisfies the hurdle to be a Defendant for a RFRA cause of action (and other causes of action), as it wickedly conscripted the assistance of the Philadelphia Police Department in a violent act of vigilantism,...thereby rendering itself as a person acting under the color of State law." Plt.'s Resp. to Def. Serrano's Mot. to Dismiss, ¶28. This argument fails for obvious reasons. Although a private individual or business can become a state actor in limited circumstances, a private party's decision to seek the assistance of a state or municipal agency in enforcing a court order does not meet the standard for state action.

[6] Plaintiffs withdrew their claims against the Federal Defendants for violations of §1983 (in Counts VI through VIII). *See* Plt's Resp. to Fed. Def's Mot. to Dismiss at 5, ECF 35.

was transferred to Defendant Serrano Acquisitions "without notice or due process." SAC ¶47. Plaintiffs further allege that Philadelphia's Police Department and Serrano Acquisitions "broke open the front door to the property and trespassed therein, without a warrant or benefit of any due process whatsoever..." *Id.* ¶55. This argument fails both for the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, and because Plaintiffs received due process through the state court ejectment proceeding, during which they were represented by counsel.

For the reasons set forth in in the *Honkala* companion case, Plaintiffs' claims under the equal protection clause also fail.

**6. Plaintiffs Fail to Establish a State Created Danger Claim**

For the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, Plaintiffs' claims fail.

Moreover, unlike in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, in which Plaintiffs' state created danger claim focused on the city's intent to evict, here, it is Serrano Acquisitions, and not a state actor, that brought eviction proceedings against Plaintiffs. Therefore, Plaintiffs do not meet the elements of the state-created danger theory, which requires, among other elements, that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281.

To the extent that Plaintiffs are arguing that the governmental defendants, through the eviction process in court, "rubber-stamped" the eviction, and therefore made Plaintiffs "more vulnerable to danger than had the state not acted at all," *Bright.*, 443 F.3d at 281, this would take the "state

created danger" doctrine to extraordinary lengths, wherein any judgement affirming an eviction against a person illegally residing in a property could constitute a state-created danger.

### 7. Because Plaintiffs have not successfully pled an underlying violation of federal law, their *Monell* claim fails

For the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, Plaintiffs' claims fail.

### 8. Plaintiffs Fail to Establish a Claim with respect to Pennsylvania's Abandoned and Blighted Property Conservatorship Act.

Plaintiff brings claims under Pennsylvania's Abandoned and Blighted Property and Conservatorship Ac, 68 P.S. §1101, to fund a Conservator to rehabilitate 106 E. Westmoreland Street. The act is aimed at rectifying the problem in which Pennsylvania residents are "adversely affected by abandoned and blighted residential, commercial and industrial properties" by "transform[ing] the... buildings into productive reuse." *See* 68 P.S. § 1102(1) and §1102(5). Under the Act, [i]f the owner of a residential, commercial or industrial building fails to maintain the property in accordance with applicable municipal codes or standards of public welfare or safety," the Commonwealth may "appoint a conservator to make the necessary improvements before the building deteriorates further..." 68 P.S. § 1102(6).

As an initial matter, it is doubtful that this Court has jurisdiction over such a claim. Substantively, Plaintiffs' claims would fail regardless because 106 E. Westmoreland Street is not an abandoned property pursuant to the definitions in the Act. A court may appoint a Conservator if, at the date of filing, the current owner of the property "fail[s] to present sufficient evidence that he has acquired the property within the preceding six months." 68 P.S. § 1105(d)(4). Serrano Acquisitions purchased the property in February 2021, and Plaintiffs filed their first complaint in

March 2021.  ECF 1.  Plaintiffs themselves do not dispute this timeline, with the result that no court would be entitled to deem the property abandoned.

### 9. Plaintiffs Fail to Establish a Claim under the Declaratory Judgment Act

For the reasons set forth in *Honkala et. al v. U.S. Department of Housing and Urban Development, et al.*, Civil Action No. 21-0684, Plaintiffs' claims fail.

### IV. Conclusion

Plaintiffs state a strong case of unmet needs. Their Complaint succeeds in focusing attention on the crisis of homelessness. But wholly apart from the conclusory nature of many of the allegations, the fundamental deficit is Plaintiffs' failure to assert any legally cognizable causes of action.  Plaintiffs have amended twice, and I am convinced that further amendments would be futile.  ECF 13, 31.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.") The action will therefore be dismissed with prejudice.

An appropriate order follows.

   /s/ Gerald Austin McHugh
United States District Judge